Thomas J. McNair, George W. Merrill, and Wilber I. Cram, plaintiffs in error, v. The State of Nebraska, ex rel. Amanda J. Powers, defendant in error.

[Filed April 4, 1889.]

1. **Roads:** Section Lines. Under the provisions of section 46 of chapter 78 of the Compiled Statutes, entitled roads, section lines are declared to be public roads established by act of law, subject to be opened by the county board when the public good requires it. The order of the county board declaring a section line to be a public highway, or establishing a line of road thereon and ordering it to be opened by survey by the county surveyor, is an establishment of a public highway on such line which can only be vacated by pursuing the course designated in said chapter.

2. ———: ———: Vacation. An order of a county board afterwards made declaring such highway "no road," for the reason that the public good does not justify the expense, without any proceedings, by petition or otherwise, by which they could obtain jurisdiction, *held*, void.

Error to the district court for Loup county. Tried below before Harrison, J.

*A. M. Robbins*, for plaintiffs in error.

*A. S. Moon*, for defendant in error.

Reese, Ch. J.

This was an application to the district court for a peremptory writ of mandamus to the board of county commissioners of Loup county for the purpose of compelling them to vacate an order made by them on the 4th day of October, 1887, declaring a section-line road previously ordered open, "no road, for the reason that the public good does not justify the expense."

17

It was alleged in the relation that the plaintiffs in error were the board of county commissioners of Loup county, McNair being chairman; that on the 12th day of October, 1886, Caleb Jeffers, Thomas J. McNair, and Wilber I. Cram, constituted the board, Jeffers being chairman; that on that day at a regular session of the board, the following proceedings were had and duly entered of record:

On motion of Cram it was voted to establish a certain line of road on section line, as follows: Commencing on the northwest corner of section thirty-six, township twenty-one north, of range eighteen west; running thence east to the northeast corner of section thirty-two, township twenty-one north, of range seventeen west; and the county clerk is hereby instructed to notify the county surveyor to perpetuate the existing government corners along the line of said road by planting monuments of some durable material, with suitable witnesses, whenever practicable, and make a record of the same; that on the 16th day of October, 1886, the county clerk of Loup county notified the county surveyor, as instructed by the county board, and on the 5th day of May, 1887, the county clerk caused to be published in a weekly paper published in Loup county, a notice to land owners, notifying them as to the location of said road, said notice being published four consecutive weeks; that said road was included in road district No. 1 of Loup county; that Robert A. Woods was road overseer of said road district No. 1; and that on the 14th day of May, 1887, the county clerk of Loup county notified said Robert A. Woods of the establishment of the above-described line of road, and directed said Woods to have said road opened and worked; that at various times during the summer said Woods caused portions of said road to be opened, expending in so doing a large amount of labor; that on and before the 15th day of July, 1887, the limit of the time set for the filing of remonstrances, no objections were filed in reference

to the above-described road; and that between the 8th day of June and the 13th day of July, 1887, claims for damages were filed, a part of which were allowed by the appraisers appointed to assess the same; that on the 4th day of October the plaintiffs in error unlawfully vacated said road, without being petitioned by any voter, giving as the reason that the public good does not justify the expense; that the public good does require that said section lines be opened and worked as other public roads; and this the board of county commissioners refuse to order.

An alternative writ of mandamus, containing substantially all the allegations of the petition, was issued. To the petition and writ, plaintiffs in error demurred, assigning as grounds thereof the following:

"1st. Plaintiff has not legal capacity to sue.

"2d. Because there is a defect in parties plaintiff.

"3d. Because the petition does not state facts sufficient to constitute a cause of action in favor of the plaintiff and against the defendants.

"4th. Because the petition shows that the defendant had exhausted all power on them conferred."

The demurrer was overruled by the district court, and plaintiffs in error refusing to answer or plead further, but electing to stand on the demurrer, a peremptory writ was allowed. Plaintiffs in error bring the case to this court by proceedings in error.

It is contended by plaintiffs in error that mandamus is not the proper action, there being a plain and adequate remedy in the ordinary course of the law, by proceedings in error from the action of the county board declaring the road "no road;" and in support of this, *The People, ex rel. Nye, v. Martin,* 4 Neb. 49, is cited. While upon the other hand it is contended that the proceedings referred to are void, and that it is the duty of the board to vacate the same and allow the road to be opened and worked in accordance with their previous order.

The case of *The People v. Martin* was where, in an election contest case, the justices of the peace who had been selected to try the contest excluded certain testimony which the relator produced and considered material to his case; and it was sought to compel the justices to reassemble as a board, receive the testimony rejected, and reduce it to writing as required by the statutes.

It was held that the writ could not issue, for the reason that the relator was given the right to appeal, by statute, and that that was the proper remedy.

In that case the justices of the peace were acting in a matter then pending before them, and of which they had jurisdiction and authority to act. In this case it is insisted by defendant in error that nothing was pending before the county board, the road having been previously established, and that the proceeding referred to was a nullity.

It is further insisted by plaintiffs in error, upon the authority of *Throckmorton v. State*, 20 Neb. 653, that the opening of the section-line roads by the county board, is a matter of judicial discretion, with which a court cannot interfere by mandamus.

There is no doubt but that the matter of opening section-line roads is left to the discretion of the various county boards, by section 46 of chapter 78 of the Compiled Statutes, as decided in the case referred to; but the important question here is, whether or not there was any judicial discretion to be exercised at the time of making the order complained of. As was alleged in the petition and writ, this jurisdiction and discretion were exercised on the 12th day of October, 1886, when the line of road was established, and the proper orders were made requiring it to be thrown open and prepared for public use. But it is contended that before the county board can legally make such order, they must find that " the public good requires " the opening of the road, as provided in the section above referred to.

This is no doubt true; but we know of no law which requires such finding to be entered upon the records of the county; and even were it necessary, it is quite probable that the order would be voidable only, to be reviewed upon error, and would not be open to collateral attack. (*Hansen v. Bergquist*, 9 Neb. 269.)

However, under the well-known rule of law that in matters before inferior courts their proceedings will be construed with great liberality, (*Haggard v. Wallen*, 6 Neb. 271,) and that all presumptions are in favor of the regularity of their proceedings, except as to jurisdiction, it must be presumed that the necessary facts were found by the board.

By section 46 of chapter 78, above referred to, section lines are declared to be public roads, subject to be opened by the direction of the county board whenever the public good requires it. The road was established by act of law under the provisions of this section. It only remained for the county board to order the same open, which they did on the 12th day of October, 1886, as shown by the petition, and which is admitted by the demurrer.

The overseer of the road district 'was directed to open and work the road, and in pursuance of such direction he caused a portion of the road to be opened and worked. By this the section line was made as much a public highway as any established road in the county. It had passed beyond the jurisdiction of the county board, and was no more subject to their control than any other legally-established public highway. Its vacation could be effected only by pursuing the course provided for in section 4 of the road law, and in no other way could the county board acquire jurisdiction for that purpose. Their declaring that it was "no road" was simply void, and did not effect the legal status of the highway. It is the duty of the overseer of roads of the district wherein the road is located, to pro-

ceed in opening the road the same as if the action complained of had not been taken by the county board.

The decision and judgment of the district court requiring the county commissioners to cancel the order referred to, was correct and is affirmed.

JUDGMENT AFFIRMED.

THE other Judges concur.